UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES D. WARD,

                   **Plaintiff,**

-vs-                                 **Case No. 6:04-cv-1214-Orl-31KRS**

UNIVERSITY OF CENTRAL FLORIDA
BOARD OF TRUSTEES d/b/a University of
Central Florida,

                   **Defendant.**

_____

# ORDER

The Plaintiff, James Ward ("Ward") has sued the University of Central Florida ("UCF"), alleging that UCF retaliated against him when it refused to hire him, in violation of Title VII of the Civil Rights Act, 42 U.S.C. section 2000e, *et seq.* ("Title VII"). This matter is presently before the Court on UCF's Motion for Summary Judgment (Doc. 40), and Ward's Opposition thereto (Doc. 54).

I.      **Background**

     A. Facts

In October of 1993, Ward filed a charge of race discrimination with the EEOC against a former employer, the University of New Orleans, and then in March of 1994 filed a lawsuit, based upon that race discrimination charge, against the University, in which he sued approximately nineteen administrators, professors and other individuals. (Doc. 43, Att. 2 at 28-29; Doc. 57 at 4).

In July of 1996, Ward was attending a conference when he met Wendell Lawther ("Lawther"),[1] who approached Ward and discussed with him employment opportunities at UCF.[2] (Doc. 43, Att. 2 at 15).[3]  After Ward discussed his background with Lawther, Lawther asked Ward to send his resume and application materials to UCF so that Lawther could share them with the search committee.[4]  (*Id.*).  Lawther told Ward that he seemed like a person in whom UCF would be interested.  (*Id.*).  While at the conference, Lawther spoke with Dr. May Bailey, who had been Ward's dissertation advisor.  (Doc. 39 at 3).  Dr. Bailey gave Ward a "generally positive reference," but also stated that Ward had a problem during his time at the University of New Orleans and had filed a lawsuit against that school.  (*Id.*).  She did not discuss the specifics of the lawsuit, but Lawther got the impression that Ward's lawsuit involved racial discrimination.  (*Id.*).  However, this information about the lawsuit did not dissuade Lawther from further investigating Ward's potential as a candidate for a position with UCF.[5]  (*Id.* at 3-4).

---

[1] Lawther is an associate professor in the Department of Public Administration.  (Doc. 56 at 7).

[2] UCF is a public corporation doing business in the State of Florida.  It is an "employer" as that term is defined by Title VII.

[3] The depositions in this case were electronically filed in such a manner as to make it exceedingly difficult to accurately represent the correct page number by citing to the attachment and page number assigned by the electronic filing system.  Therefore the Court will simply apply the attachment number wherein the first page of the deposition appears (for example, Ward's deposition appears at Doc. 43, and his deposition begins at Attachment 2), and then cite to the actual deposition page number (as opposed to the page number assigned by the electronic system).

[4] Ward did not believe that, as a result of this conversation, Lawther had committed to hiring him for a position at UCF.  (Doc. 43, Att. 2 at 14).

[5] Ward was being considered for a position as an Associate or Assistant Professor of Public Administration.

After the conference, Ward sent the requested materials to Lawther, who subsequently called Ward and told him that both he and the search committee were impressed, that Ward's references were positive, and that they wanted him to visit for an interview.  (Doc. 43, Att. 2 at 15).  Several days later, on July 10, 1996, Lawther informed Ward that his interview would be delayed because

> they had talked to one of [Ward's] references and the reference had mentioned a lawsuit that [Ward] had filed against the University of New Orleans and that it was no problem with him, but that once he mentioned it to his dean, Belinda McCarthy, that she had a problem with it.  And that she had told him to put the interview on hold until they could call more people.

(Doc. 43, Att. 2 at 16).  Lawther also told Ward that "because they had found out about the lawsuit they would no longer be able to bring [Ward] down for an interview."  (*Id*. at 17; *see also id*. at 57).[6]  Ward also states, however, that Lawther told him that

> '[W]e have a problem, you know, we found out about' -- he says, 'Mary Bailey told me about your lawsuit, and it's not a problem with me, but my dean here, she's insisting that we call other people you don't have listed as references.  So we're going to have to put the interview on hold until we call some more people.'

(*Id*. at 58; *see also id*. at 60).[7]

Lawther also informed Ward that he had spoken with Ward's references, all of whom had been positive, but that he (Lawther) had also spoken with two additional individuals (who Ward

---

[6] Around the time he applied to UCF, Ward also made between 150 and 200 additional applications to other employers.  (Doc. 43, Att. 2 at 21).  A number of these potential employers informed Ward that they were aware of his lawsuit, but he did not file suit against any of them, mostly because he "just want[ed] to get on with [his] career."  (*Id*. at 21-22).  He admits, however, that he filed suit against UCF "with an idea that other potential employers may think twice before they considered [his] prior lawsuit."  (*Id*. at 79).  He also believes that UCF should be held accountable for other negative events in his career.  (*Id*. at 114-15).

[7] Belinda McCarthy, Dean of UCF's College of Health and Public Affairs ("McCarthy"), states that the fact that an applicant had previously filed a lawsuit related to issues of racial discrimination would not be a disqualifying factor.  (Doc. 44, Att. 2 at 5).

had not listed as references) who gave negative comments about Ward.[8]  (Doc. 43, Att. 2 at 48-49, 52, 55).[9]  One of these negative references simply told Lawther not to hire Ward.[10]  (*Id*. at 48-49, 56).  Another reference, when asked about Ward, simply and abruptly stated, "no comment," which Lawther viewed as a negative reference.[11]  (Doc. 39 at 4).  Neither of these first two negative references mentioned Ward's lawsuit.  (*Id*. at 4-5).  Other references raised concerns about what had happened at the University of New Orleans and about Ward's "inability to stay at one place very long."[12]  (Doc. 43, Att. 2 at 100).  Ward asserts, however, that when Lawther informed him that he would not be interviewed, Lawther did not reference Ward's inability to stay at one place and instead only mentioned the lawsuit.  (*Id*. at 107-108).

Lawther states that he and McCarthy made the decision not to hire Ward after receiving the two negative references, that he never informed Ward that he would not be hired because of the

---

[8] Ward admits that he does not know what these negative references told Lawther.  (Doc. 43, Att. 2 at 102, 121-24).

[9] McCarthy states that references are an important factor to consider in hiring a professor for the public administration program, that the committee considers both favorable and unfavorable recommendations, and that it is common to contact references not listed in an applicant's application in order to gain as much information as possible about the applicant.  (Doc. 44, Att. 2 at 4).  Ward does not believe that it was appropriate for his references to have recommended that Lawther speak with additional people, nor does he believe that Lawther should have followed up by speaking with those additional people.  (Doc. 43, Att. 2 at 53-54).

[10] Ward acknowledges that such a statement is not a positive reference.  (Doc. 43, Att. 2 at 56).

[11] Lawther indicates that he was "surprised and shocked" to receive that type of comment, because it is "unheard of and considered quite negative."  (Doc. 56 at 17).

[12] Ward seems to acknowledge that it is appropriate for an employer to consider how long a potential employee has worked for past employers and whether that potential employee has been "bouncing around from job to job."  (Doc. 43, Att. 2 at 103).  He subsequently contradicts himself, however, and states that he does not believe potential employers should consider that factor.  (*Id*. at 103-105).  In any event, he states that he "couldn't stay at one place very long . . . because all [he] could get was one-year appointments. . . . [A]nd because [he] couldn't get a tenured track position because of . . . New Orleans."  (*Id*. at 101).

lawsuit, and that the lawsuit was not a factor in Ward's rejection. (Doc. 39 at 5-6). Instead, Lawther asserts, UCF rejected Ward's application because of the two negative references, neither of which mentioned Ward's lawsuit. (*Id.* at 6-7; *see also* Doc. 55 at 3).

B. Claims and Arguments

Ward has asserted a claim for Title VII retaliation against UCF, and alleges that: (1) he engaged in a protected activity by filing the EEOC charge and subsequent lawsuit against his previous employer; (2) UCF subjected him to an adverse employment action by rejecting his application for employment; and (3) in rejecting his application, UCF retaliated against him for his prior EEOC charge and lawsuit. UCF has moved for summary judgment, arguing that Ward cannot establish a *prima facie* case of discrimination, and that, even if he could, UCF has offered legitimate non-retaliatory reasons for its actions which reasons Ward has failed to rebut. UCF also relies on the "mixed-motive defense," and argues that it should prevail here because it has proven that it would have made the same decision regarding its refusal to hire Ward even absent his prior charges of discrimination.

## II.    Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted).  Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352.  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).[13]

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.  The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments.  *Beal*, 20 F.3d at 458-59.  If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial.  *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

---

[13] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

**III.     Legal Analysis**

A. Title VII Retaliation

Title VII makes it unlawful for an employer to discriminate against any employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000).

To prove a *prima facie* case of retaliation under Title VII,

> a plaintiff must establish (1) that there was a statutorily protected participation; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action.

*Padron v. Bellsouth Telecomm., Inc.*, 196 F. Supp. 2d 1250, 1255 (S.D. Fla. 2002); *Raney v. Vinson Guard Svc., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).  To show "statutorily protected participation," the plaintiff must show that he opposed an unlawful employment practice which he reasonably believed occurred.  *Padron*, 196 F. Supp. 2d at 1225; *Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989) ("claim does not require that the employer actually have been engaged in an unlawful employment practice," only that plaintiff have had a reasonable belief that such an unlawful practice occurred).  An adverse employment action is

> an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.

*Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001) (internal citation and quotation omitted); *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th

Cir. 2004).  To establish a causal link, the plaintiff must show that "the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F. 3d 571, 590 (11th Cir. 2000) (internal citation and quotation omitted).  That element may be shown, for the purposes of proving a *prima facie* case, by showing a close temporal proximity between the protected activity and the adverse action, to show that the two were not wholly unrelated.  *Id.*; *Padron*, 196 F. Supp. 2d at 1256.

A plaintiff may prove a *prima facie* case of Title VII retaliation by either direct or circumstantial evidence.[14]  *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).  Because Ward asserts that he has presented direct evidence of retaliation, the Court addresses that argument first.

B. Direct Evidence

Direct evidence is "evidence, which if believed, proves the existence of the fact in issue without inference or presumption." *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999) (internal citation, quotation and punctuation omitted); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require . . . an inferential leap between fact and conclusion.").  In contrast, evidence "that only suggests [retaliation] or that is subject to more than one interpretation does not constitute direct evidence." *Taylor*, 175 F.3d at 867 (internal citation and quotation omitted); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) ("If the alleged statement

---

[14] "Whether evidence is characterized as 'direct' or 'circumstantial' dramatically affects the allocation of the evidentiary burdens . . . ." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998).

suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence."). Courts

find direct evidence where "actions or statements of an employer reflect a discriminatory or

retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."

*Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (internal citation, quotation

and punctuation omitted).  Under Eleventh Circuit precedent, "only the most blatant remarks,

whose intent could mean nothing other than to" retaliate on the basis of an impermissible factor

constitute direct evidence of retaliation.  *Wilson*, 376 F.3d at 1086 (internal citation and quotation

omitted).  Thus, a statement that, "at best merely suggests" a retaliatory motive is, by definition,

only circumstantial evidence.  *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).

Where a plaintiff presents direct evidence, summary judgment is inappropriate, even where

the movant presents conflicting evidence.  *Taylor*, 175 F.3d at 867 n.2.  In such a case, the Court is

not to weigh conflicting evidence or make credibility determinations, and "the non-movant's

evidence is to be accepted for purposes of summary judgment."  *Mize v. Jefferson City Bd. of

Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).  Further, in cases where the plaintiff relies on direct

evidence, the Court does not apply the *McDonnell Douglas* test because where circumstantial

evidence is used that test creates an inference of discrimination, whereas no such inference is

required when a plaintiff relies on direct evidence.  *Taylor*, 175 F.3d at 867 n.2; *see also

Thompkins v. Morris Brown Coll.*, 752 F.2d 558, 563 (11th Cir. 1985).

Ward asserts that Lawther told him "point blank . . . that UCF could not hire him because

of his prior lawsuit."  (Doc. 54 at 11).  However, the statements Ward has offered in this regard do

not address the ultimate hiring decision, and instead, each deals with only a part of that process,

namely the interview.  In two of those alleged statements, Lawther told Ward that he (Lawther)

was aware of the lawsuit, that it was not a problem with him, but that McCarthy wanted him to call additional references.  (*See* Doc. 43, Att. 2 at 16, 58, 60).  In a third statement, Lawther allegedly stated that they could not bring Ward for an interview because they knew about the lawsuit.  (*Id*. at 17, 57).  Notwithstanding Ward's mischaracterization of his own testimony, the Court must determine whether these statements constitute direct evidence of retaliation.

Viewing these alleged statements together, and construing them in Ward's favor, they cannot be read as being subject to only one interpretation.  Instead, they may be interpreted in at least two ways: (1) UCF refused to hire Ward because of his prior lawsuit; or (2) although UCF was aware of the lawsuit, that fact simply motivated UCF to check additional references before proceeding with the hiring process (*i.e.* inviting Ward for an interview).  Because these statements are subject to more than one interpretation, they do not constitute direct evidence of retaliation. *See Schoenfeld*, 168 F.3d at 1267; *Carter*, 132 F.3d at 642.  As Ward has not presented direct evidence of retaliation, the Court must determine whether he has established a *prima facie* case with circumstantial evidence.

C. Circumstantial Evidence

*1) Applicable legal principles*

Title VII's burden-shifting standard applies where a plaintiff relies on circumstantial evidence of retaliation.  *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Padron*, 196 F. Supp. 2d at 1255.  Once the plaintiff establishes a *prima facie* case, (*see* Section III(A), *supra*), a presumption of retaliation is created.  *Johnson*, 234 F.3d at 507 n.6; *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993).  The burden of production then shifts to the defendant to rebut the presumption of retaliation by producing at least one legitimate

reason for the adverse employment action.  *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999); *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998).  The defendant does not have to persuade the court that it was actually motivated by those reasons.  *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Instead, the defendant must only offer sufficient evidence to create a genuine issue of fact as to whether it retaliated against the plaintiff, and may do so by introducing evidence demonstrating the reasons for the action taken against the plaintiff.  *Id*. at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (noting that this burden "is one of production, not persuasion").  The defendant's explanation in this regard must be "legally sufficient to justify a judgment for the defendant."[15] *Burdine*, 450 U.S. at 254.

If the defendant offers legitimate reasons, the presumption of retaliation disappears, and the plaintiff must then show that the employer's proffered reasons for taking the adverse action were merely pretextual.  *Johnson*, 234 F.3d at 507 n.6; *Sullivan*, 170 F.3d at 1059.  The plaintiff may do so either by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[16] *Burdine*, 450 U.S. at 256.  Therefore, ultimately, the burden of persuasion remains with the plaintiff.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-508 (1993); *Burdine*, 450 U.S. at 253; *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Summary judgment in

---

[15] At the same time, however, the defendant's burden is only one of production, not of proof, and this burden is "exceedingly light."  *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983); *see also Padron*, 196 F. Supp. 2d at 1256 (noting that the rebuttal standard is low).

[16] "In order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case."  *Hairston*, 9 F.3d at 921.

favor of the employer is proper where the plaintiff fails to offer sufficient evidence to satisfy the

burden of establishing a genuine issue of material fact as to whether the employer's reasons were

pretextual.  *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004); *Wascura v.*

*City of S. Miami*, 257 F.3d 1238, 1243 (11th Cir. 2001).  It is not sufficient for the plaintiff to offer

merely conclusory allegations and assertions, *Earley*, 907 F.2d at 1081, and the plaintiff

> is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

*Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (internal citations omitted).

> It is the Court's task to determine,

> in view of all the evidence . . . whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.  The [Court] must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal citations and

quotations omitted).  The Court does not sit as a "super personnel department," nor will the Court

second-guess the business judgment of the employer.  *Chapman*, 229 F.3d at 1030 (internal

citations omitted).  Indeed, the Court is "not in the business of adjudging whether employment

decisions are prudent or fair.  Instead, [the Court's] sole concern is whether unlawful

discriminatory animus motivates a challenged employment decision." *Damon v. Fleming*

*Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

*2) UCF's employment decision regarding Ward*

The Court presumes, for the purpose of this analysis, that Ward has offered sufficient circumstantial evidence to establish a *prima facie* case of retaliation against UCF: (1) Ward engaged in protected activity by filing a discrimination lawsuit against the University of New Orleans; (2) UCF did not hire him; and (3) Ward has stated that UCF's decision was related to his prior lawsuit. Thus, under the *McDonnell Douglas* framework,[17] the Court must determine whether UCF has offered legitimate, non-retaliatory reasons for its actions and whether Ward has rebutted such reasons.

*i. UCF has offered a legitimate non-discriminatory reason*

UCF asserts that the decision not to interview or hire Ward was made based on the negative comments received from two references. Lawther contacted a professor at Eastern Washington University who responded abruptly with, "no comment," refused to discuss the issue further, and gave no specifics as to why he refused to comment on Ward.[18] (Doc. 39 at 4). Lawther and McCarthy both viewed this response as a negative reference. (*Id.*). Lawther also contacted another professor who knew Ward in a professional capacity, and this professor told Lawther not to hire Ward, but did not discuss either her reasons for her statement or Ward's

---

[17] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). If Ward had successfully established a *prima facie* case based on direct evidence, the Court would not apply this burden-shifting framework, *see Thompkins*, 752 F.2d at 563, but because he has not done so, the Court applies the analysis mandated for circumstantial evidence. The fact that Ward has not offered direct evidence of retaliation does not preclude Ward from attempting to establish a *prima facie* case using circumstantial evidence.

[18] This professor knew Ward in a professional capacity based on their common experiences at Eastern Washington University, and thus Lawther considered him to be a "knowledgeable reference." (Doc. 39 at 6).

lawsuit.[19]  (*Id.* at 5).  Lawther also viewed this statement as a negative reference.  Further, both

Lawther and McCarthy deny that they based their decision regarding Ward on his lawsuit, and

assert instead that they relied simply on these negative references.  (*See* Doc. 39 at 5-7; Doc. 44,

Att. 2 at 4-5).  The fact that several knowledgeable individuals provided negative references about

Ward constitutes a legitimate non-retaliatory reason for UCF's decision not to interview and hire

Ward.[20]

### *ii. Ward has not rebutted UCF's legitimate non-discriminatory reason*

Ward's attempted rebuttal is short on facts and legal argument, but long on speculation,

inference-stretching and inappropriate invective.  Rather than offer evidence demonstrating that

UCF's reason for their actions is merely pretextual, Ward spends almost his entire opposition brief

attempting to show that UCF's reason is false, based on a number of circumstances.

After Ward filed his Charge of Discrimination with the EEOC in December of 1996,[21] (*see*

Doc. 55 at 7), UCF worked to prepare a response, (*see id.* at 9).  As part of preparing that response,

Lawther provided a written statement to Janet Balanoff, UCF's Director of Equal Opportunity and

Affirmative Action Programs ("Balanoff").  (Doc. 55 at 2-3).  In that written statement, Lawther

---

[19] McCarthy considers this professor to be knowledgeable, nationally recognized in her field, a good reference for the public administration field, and honest and informative in her references, and thus McCarthy would give great weight to this professor's reference, positive or negative, when considering a prospective employee and believes that it was appropriate for Lawther to have done the same.  (Doc. 44, Att. 2 at 5-6).

[20] This is particularly true when one considers that Lawther knew about Ward's lawsuit before he contacted any of Ward's references, and did not allow the lawsuit to dissuade him from considering Ward as a candidate.

[21] In that Charge, Ward asserts that he "was told by [Lawther] that [he] would not be hired for the position because of information [Lawther] had obtained expressing concerns about what had happened with [Ward's] former employer."  (Doc. 55 at 7).

discussed his meeting with Ward, his discussions with Ward's references, and the negative

references he received.  (*Id*.).  Lawther also flatly denied Ward's charge that he told Ward that

Ward would not be hired "because of 'information obtained expressing concerns about what had

happened with his former employer'."  (*Id*. at 3).  Lawther made no further mention of Ward's

lawsuit, and instead stated that he did not invite Ward for an interview due to a negative reference.

(*Id*.).

> UCF's response to Ward's Charge contained a section which asserted that UCF
>
> expressly denies any knowledge of [Ward's] administrative or legal actions against
> a former employer. Therefore it is categorically impossible for [UCF] to have
> retaliated against him for filing either an EEOC charge or lawsuit against his former
> employer.

(Doc. 55 at 15).[22]  Instead, the response stated that Lawther could not confirm that Ward would be

a sound addition to UCF's faculty and that Ward was not invited for an interview because "his

suitability for this particular University could not be consistently confirmed with knowledgeable

persons in the academic discipline."  (*Id*. at 15, 17).  UCF subsequently reiterated its position,

stating that: (1) Lawther heard from one of Ward's references that Ward had "gotten a raw deal" at

the University of New Orleans; (2) such a statement did not provide knowledge of a complaint or

lawsuit; (3) Lawther did not receive a description of the issues involved; and (4) while there was

an indication that employment "was the focus, the specifics were not discussed."  (Doc. 55 at 21).

Lawther subsequently stated that at the time UCF was considering interviewing Ward, he

(Lawther) only knew that a lawsuit had been filed but did not know about the contents thereof, but

---

[22] Lawther does not know whether he reviewed this statement before UCF sent it to the EEOC, but he assumes that he did.  (Doc. 55 at 20-21).

he does admit that he knew Ward had filed a lawsuit for race discrimination against a former employer.  (Doc. 56 at 23, 25).

From these circumstances, Ward draws a number of conclusions, including, *inter alia*: (1) UCF's claim that it lacked prior knowledge of Ward's lawsuit was "blatantly false," (Doc. 54 at 6); (2) UCF lied to the EEOC, (*Id*.); (3) Lawther only "came clean" out of a fear of perjury charges and "to preserve his reputation in the field," (*Id*. at n.1); (4) Lawther is a "proven liar," who "lied to the EEOC," (*Id*. at 7); (5) the EEOC "caught UCF in its lie," (*Id*. at 13 n.3); and (6) Lawther is "finally telling the truth about this issue now because if he continued to lie his colleagues would know he was a perjurer," (*Id*.).  Ward spends a great deal of time attempting to characterize UCF's argument as "absurd," but his own position is based almost entirely on speculation.[23]  Ultimately, Ward's attempt to characterize UCF's statement that it lacked knowledge of his lawsuit as a blatant lie simply ignores the explanation Lawther offered, that although they (Lawther and UCF) were aware of the lawsuit, they had no knowledge of the any of the details or circumstances involved therein, and thus did not base their decision on the lawsuit.[24]  (*See* Doc. 56 at 23).  Rather than offer concrete evidence demonstrating that UCF's explanation is pretextual, Ward instead has attempted to show that UCF engaged in a "cover-up" of a false explanation, which is pure speculation and not supported by the facts.  Ward has failed to rebut UCF's proffered legitimate,

---

[23] Throughout his memorandum, Ward uses terms such as "perhaps," "more likely," "possibility," "highly unlikely," "apparently," "we do not know for sure," and "probably pretty simple."  (*See* Doc. 54 at 6, 8, 13, 14).

[24] Ward also challenges UCF's reliance on one set of recommendations over those from other individuals.  (See Doc. 54 at 8).  However it is not the Court's place to critique the manner in which an employer seeks out and relies upon employment recommendations, and thus Ward's argument in this regard fails.  *See Chapman*, 229 F.3d at 1030; *Damon*, 196 F.3d at 1361.

non-retaliatory reason for their actions regarding Ward, and thus he has failed to meet his burden and UCF is, accordingly, entitled to summary judgment.[25]

## IV.     Conclusion

For the reasons stated herein, it is

**ORDERED THAT** the University of Central Florida's Motion for Summary Judgment (Doc. 40) is GRANTED.  This case is removed from the August 1, 2006 trial calendar.  The Clerk is directed to enter judgment for the University of Central Florida and to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 26, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[25] UCF also argued that it is entitled to summary judgment based on the "mixed-motive defense."  The Eleventh Circuit has specifically acknowledged that this defense, under which an employer may prevail by proving that it would have made the same decision absent the alleged bias, remains good law with respect to Title VII retaliation claims.  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir. 2001).  UCF asserted that it still would have made the decision not to interview Ward based on the two negative references, "separate and apart from any possible concern that may have existed about the prior litigation."  (Doc. 40 at 17).  Ward wholly failed to address this argument, and thus on these grounds alone UCF would be entitled to summary judgment.

-17-